UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

**LENIECE BRUNEY**,

Plaintiff,

– against –

**CITY OF NEW YORK**; **THOMAS P. SMITH**, individually; **STEPHEN LEWIS**, individually; and **AHMED ABDULLA**, individually,

Defendants.

------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

25-CV-1762 (AMD) (CHK)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brings this action against the City of New York, Deputy Inspector Thomas P. Smith, Officer Stephen Lewis, and Detective Ahmed Abdulla of the New York City Police Department, in their individual capacities, for alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. (ECF No 29.) Before the Court is the defendants' motion to dismiss. (ECF No. 42.) As explained below, the Court grants the motion in part and denies it in part.

## BACKGROUND[1]

The plaintiff owns a 2020 Nissan Rogue. (ECF No. 29 ¶ 17.) At some point, she loaned the car to a friend. (*Id.* ¶ 19.)[2] The driver of the car allegedly hit a pedestrian in Brooklyn, but

[1] The facts are drawn from the complaint, documents and exhibits that the plaintiff includes with the complaint or incorporates into the complaint by reference, and documents that are integral to the complaint. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).

[2] The plaintiff does not say when the friend borrowed the car.

left the scene before the police arrived. (ECF No. 45 at 7.) The friend returned the car on December 13, 2023, and parked it outside the plaintiff's home. (ECF No. 29 ¶¶ 17, 20.) Two New York City Police Department ("NYPD") officers seized the car the same day, and took it to the 71st Precinct. (*Id.* ¶ 18.) When the plaintiff tried to stop the officers, one of them told her that she could not have her car "unless and until" she told them who borrowed it. (*Id.* ¶ 21.) One officer showed the plaintiff of a photograph of a man "in an attempt to have her identify an alleged suspect." (*Id.*) The plaintiff did not identify the suspect, and the officers "effected the seizure and removed the vehicle." (*Id.* ¶ 23.) The plaintiff claims that she does not know who was involved in the hit-and-run, and that the defendants are keeping her car to "extort" her into identifying the suspect. (*Id.* ¶ 25.)

On January 3, 2024, Defendant Lewis applied for a warrant to search the car, and an order of seizure. (ECF No. 44-1.)[3] Lewis stated, among other things, that he was investigating a motor vehicle collision that "resulted in the serious physical injury" of the victim. (*Id.* ¶ 4.) He explained that the police found the victim "unresponsive in the roadway with severe head and body trauma." (*Id.* ¶ 6.) Lewis "reviewed video footage from the vicinity of the Collision Location," which showed the plaintiff's car strike the victim and leave the scene "immediately without reporting said collision to the police or emergency services." (*Id.* ¶ 7.) Lewis also noted that the plaintiff's car had damage that was "consistent with striking a pedestrian in that the subject vehicle had damage about the hood consistent with striking a pedestrian." (*Id.* ¶ 14.) New York State Supreme Court Judge Donald Leo signed the warrant. (*Id.* at 5.) On February

[3] As explained below, the Court considers the warrant application and the signed warrant because they are integral to the complaint. The warrant permitted the police to search the car for "Evidence of the crime of Leaving the Scene of an Accident Without Reporting Resulting in Serious Physical Injury," including physical and forensic evidence. (ECF No. 44-1 ¶ 2.)

12, 2025, the plaintiff sent a letter to the King's County District Attorney's Office requesting the return of her car. (ECF No. 29 ¶ 26; ECF No. 29-1.) She alleges that she was afforded "no notice of any pre-seizure or post-seizure hearing." (ECF No. 29 ¶ 32.)

The plaintiff brought this action on March 17, 2025 and filed an amended complaint on August 13, 2025. (ECF No. 1; ECF No. 29.) The plaintiff alleges that the defendants violated her Fifth and Fourteenth Amendment due process rights and her Fourth Amendment right to be free from unlawful seizure. (ECF No. 29 ¶¶ 2, 7.)[4] The defendants move to dismiss the complaint. (ECF Nos. 42–44.)

**LEGAL STANDARD**

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). Pleadings are construed in the light most favorable to the plaintiff. *See Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

[4] The plaintiff also states without explanation that her claims arise under the Eighth Amendment (ECF No. 29 ¶ 7), but does not describe any such violations or claim them in her prayer for relief. Accordingly, the Court does not construe the plaintiff's claims as Eighth Amendment claims.

## DISCUSSION

### I. Constitutional Claims

#### a. Procedural Due Process

"The Due Process Clause of the Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty or property, without due process of law.'" *Mercedes-Benz Fin. Servs. USA v. City of New York*, 770 F. Supp. 3d 643, 656 (S.D.N.Y. 2025) (quoting *Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-CV-8870, 2024 WL 4817649, at *8 (S.D.N.Y. Nov. 18, 2024)). In evaluating a Section 1983 due process claim, a court must consider "(1) whether [the plaintiff] possessed a liberty or property interest and, if so, (2) what process [she] was due before he could be deprived of that interest." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 313 (2d Cir. 2002).

There is no dispute that the plaintiff has a property interest in the use and possession of her car. To determine what process was due, and whether the plaintiff was afforded it, the Court uses the three-part inquiry in *Mathews v. Eldridge*, 424 U.S. 319 (1976): (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the [g]overnment's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335. The Second Circuit addressed "the City's continued retention of vehicles after their warrantless seizure by the police and prior to the ultimate resolution of the forfeiture action in court" in *Krimstock v. Kelly*, 306 F.3d 40, 48 (2d Cir. 2002), *abrogated by Culley v. Marshall*, 601 U.S. 377 (2024).[5]

[5] The *Krimstock* court held that a "prompt post-seizure retention hearing" was "constitutionally required." *Krimstock*, 306 F.3d at 48. In *Culley v. Marshall*, the Supreme Court held that due process "requires a

The first factor — the private interest affected by the official action — favors the plaintiff. "The deprivation of real or personal property involves substantial due process interests," especially when the property is a car. *Krimstock*, 306 F.3d at 61. "The particular importance of motor vehicles derives from their use as a mode of transportation and, for some, the means to earn a livelihood." *Id.* (citing *Lee v. Thornton*, 538 F.2d 27, 31 (2d Cir. 1976)). "Another consideration is the length of deprivation, which increases the weight of an owner's interest in possessing the vehicle." *Id.* (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 434 (1982)). The plaintiff alleges that the City seized her car in December 2023 (ECF No. 29 ¶ 18); she has now been without her car for more than two and a half years.

The second factor — "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" — also favors the plaintiff. In *Krimstock*, which involved a "DWI owner-arrestee," this factor "narrow[ly]" favored the City because a "trained police officer's assessment of the owner-driver's state of intoxication can typically expected to be accurate," and "the risk of erroneous seizure and retention of a vehicle is reduced." *Id.* at 62. The plaintiff in this case, however, is not the arrestee; she is an "innocent owner," and thus the risk of erroneous deprivation for her is "comparably greater." *Id.* at 64; *see also id.* at 56 ("[T]he Supreme Court has shown special concern for the risk of erroneous deprivation posed to innocent owners.").

The third factor — the government's interest — also weighs in the plaintiff's favor. The defendants do not explain their interest in retaining the car for more than two years. In her opposition to the motion to dismiss, the plaintiff says that the City offered to return her car if she

---

*timely* forfeiture hearing," but "does not require a separate preliminary hearing." *Culley*, 601 U.S. at 384–386 (emphasis in *Culley*).

signed a "waiver" of defenses and claims against the City, which suggests that the City's only interest in keeping the car is to secure a signed release. (ECF No. 45-2 at 2; *see also* ECF No. 45-2 at 2.) The Court does not consider this allegation, because the plaintiff did not include it in her complaint. *See Chambers*, 282 F.3d at 154. Still, the defendants have not asserted any legitimate interest in holding onto the plaintiff's car. Nor do they claim that holding a hearing would impose a significant burden.

Evaluation of the *Mathews* factors compels the conclusion that the plaintiff was entitled to due process. "For more than a century the central meaning of procedural due process has been clear: Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation omitted). The hallmarks of due process are the "right to notice and an opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Id.* (citation omitted). "[A] post-seizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." *Culley*, 601 U.S. at 386. The plaintiff was entitled to be notified after the police seized her car that she had a right to a hearing. *See Krimstock*, 306 F.3d at 68–69 (holding that the plaintiff was entitled to "an early opportunity to test the probable validity of further deprivation, including probable cause for the initial seizure, and to ask whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting the vehicles from sale or destruction *pendente lite*"). She plausibly alleges that she did not receive that notice, and that the post-seizure delay has become so prolonged as to deprive her of her due process rights. (*See* ECF No. 29 ¶¶ 26–32.)

According to the defendants, *Krimstock* does not apply when property is seized pursuant to a warrant. But the defendants did not get a warrant until January 3, 2024, more than two

weeks after they seized her car. (*See* ECF No. 44-2.) That warrant authorized the police to execute the search within ten days and "return[] and deliver[] to the Court without unnecessary delay" any property they seized pursuant to the warrant. (*See id.*) The precise bounds of the search and seizure authority granted by the warrant, and whether the search and seizure were executed within those bounds, are issues for summary judgment or trial. *Cf. Rivera v. United States*, 928 F.2d 592, 606–08 (2d Cir. 1991) (whether searches were executed in accordance with search warrant was question for trial). In any event, a warrant is not a substitute for the plaintiff's right to challenge the retention of her car.

The defendants also say that they followed the procedures for vehicle seizures enunciated in *Krimstock IV*, 506 F. Supp. 2d 249 (S.D.N.Y. 2007), by applying *ex parte* for a retention order, and that the plaintiff "should have demanded a copy of the Order and requested a hearing, . . . which she does not allege to have done." (ECF No. 43 at 18.) The defendants do not explain how the plaintiff could have known to demand a copy of the order or request a hearing when they did not notify her that she could do so. In any event, these are factual questions that the Court cannot resolve at this stage.

Accordingly, the Court denies the motion to dismiss the plaintiff's procedural due process claim and her claims for declaratory and injunctive relief.

*i. Adequacy of State Law Remedies*

The defendants maintain that the plaintiff's complaint should be dismissed because she had adequate post-deprivation remedies, including an Article 78 proceeding. (ECF No. 43 at 18–19.) Post-deprivation remedies, like Article 78 proceedings, satisfy due process only when the deprivation resulted from a "random, unauthorized act by a state employee." *Hellenic Am, Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). But when

the deprivation flows from systemic practices or established procedures, rather than a random act, the availability of post-deprivation remedies does not by itself satisfy due process. *See Logan*, 455 U.S. at 436; *see also Hamilton v. City of New York*, No. 24-CV-2550, 2025 WL 2961714, at *4 (S.D.N.Y. Oct. 20, 2025). "[W]here the deprivation is systemic, litigants have a well-established right to pursue their claims in federal court without resorting to state judicial remedies." *Van Oss v. New York*, 783 F. Supp. 2d 681, 695 (S.D.N.Y. 2011); *see also Krimstock*, 306 F.3d at 60 ("[T]he suggested remedy of an Article 78 proceeding does not provide a prompt and effective means for claimants to challenge the legitimacy of the City's retention of their vehicles *pendente lite.*").

The plaintiff "alleges that the NYPD's practice of seizing and retaining vehicles without prompt hearings — and its practice of failing to train its police officers in their responsibilities under *Krimstock* — is a systemic policy." *Hamilton*, 2025 WL 2961714, at *5. As explained below, the plaintiff properly pleaded a *Monell* claim against the City on that basis. Accordingly, the plaintiff was not required to pursue state post-deprivation remedies before filing a federal claim.

**b. Substantive Due Process**

"Substantive due process protects against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against a government action that is 'incorrect or ill-advised.'" *Kaluczky v. City of White Plains*, 57 F.3d 202, 211 (2d Cir. 1995) (quoting *Lowrance v. Achtyl*, 20 F.3d 529, 538 (2d Cir. 1994)). "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." *Natale v. Town of Ridgefield,* 170 F.3d 258, 263 (2d Cir. 1999).

The plaintiff alleges that the defendants "arbitrarily, capriciously, and deliberately deprived the plaintiff of [her] property rights." (ECF No. 29 ¶ 53.) But "not all property rights are entitled to the protections of substantive due process." *Fasciana v. Cnty. of Suffolk*, 996 F. Supp. 2d 174, 183 (E.D.N.Y. 2014). Rather, substantive due process protects "fundamental" rights, such as those "relating to marriage, family, procreation, and the right to bodily integrity." *Id.*; *see also Albright v. Oliver*, 510 U.S. 266, 272 (1994). The plaintiff's property interest in the use and possession of her car is not a fundamental right subject to substantive due process protections. Accordingly, the plaintiff's substantive due process claim is dismissed.

**c. Fourth Amendment**

"The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the states — and to municipalities and municipal subdivisions acting under color of state law — through the Fourteenth Amendment." *Rackley v. City of New York*, 186 F. Supp. 2d 466, 470 (S.D.N.Y. 2002). A seizure of property "occurs when there is some meaningful interference with an individual's possessory interests in [his] property." *Id.* (quoting *Soldal v. Cook County*, 506 U.S. 56, 61 (1992)). However, "reasonableness is still the ultimate standard under the Fourth Amendment." *Id.* (quoting *Soldal*, 506 U.S. at 71.) "To determine whether a search or seizure is reasonable, courts consider 'whether the action was justified at its inception.'" *Anderson v. Townsend*, No. 21-CV-3569, 2021 WL 5359681, at *3 (S.D.N.Y. Nov. 17, 2021) (quoting *O'Connor v. Ortega*, 480 U.S. 709, 725–26 (1987)).

Seizure of personal property without a warrant is ordinarily *per se* unreasonable. *United States v. Place*, 462 U.S. 696, 701 (1983). However, "[w]here law enforcement authorities have probable cause to believe" that the property holds "evidence of a crime," the Fourth Amendment permits warrantless seizure, "pending issuance of a warrant to examine its contents, if the

exigencies of the circumstances demand it or some other recognized exception to the warrant requirement is present." *Id.*; *see also Harrell v. City of New York*, 138 F. Supp. 3d 479, 488–89 (S.D.N.Y. 2015) ("There are recognized exceptions under which warrantless seizures will be considered reasonable."), *on reconsideration in part sub nom. Harrell v. Joshi*, No. 14-CV-7246, 2015 WL 9275683 (S.D.N.Y. Dec. 18, 2015).

When a car is involved in a crime, there are often exigent circumstances because the "opportunity to search is fleeting since a car is readily movable." *Cardwell v. Lewis*, 417 U.S. 583, 590 (1974) (quoting *Chambers v. Maroney*, 399 U.S. 42, 50–51 (1970)). "This is strikingly true where the automobile's owner is alerted to police intentions and, as a consequence, the motivation to remove evidence from official grasp is heightened." *Id.*

The officers had probable cause to seize the plaintiff's car. They told the plaintiff that it had been involved in a hit-and-run incident, which was described in the application for the warrant. (*See* ECF No. 44-1.) Moreover, according to the warrant application, there were exigent circumstances that justified the police in seizing the car immediately. Lewis represented in the warrant application that the driver of the car struck a pedestrian, causing serious injury, and fled the scene. (*See id.* ¶ 6.) Seizure of the plaintiff's car was necessary so that the police could search it and perform any necessary forensic testing. (*See id.* ¶¶ 21–22.)[6]

"The Second Circuit has held that where the reasonableness of an initial seizure is adjudicated, 'failure to return the items does not, by itself, state a separate Fourth Amendment

[6] The defendants submitted the search warrant application and the warrant with the motion to dismiss. The Court considers this evidence, because it is integral to the complaint. *See Salvador v. City of New York*, No. 15-CV-5164, 2016 WL 2939166, at *2 (S.D.N.Y. May 19, 2016) (considering search warrant attached to motion to dismiss as integral to the complaint because "its validity is at the core of [plaintiff's] claims" (citing *Smith v. Hogan*, 794 F.3d 249, 254 (2d Cir. 2015)); *Floyd v. Rosen*, No. 21-CV-1668, 2022 WL 1451405, at *2 (S.D.N.Y. May 9, 2022) (noting that a court may take judicial notice of an application for a search warrant).

claim.'" *Anderson*, 2021 WL 5359681, at *5 (quoting *Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012)). Accordingly, the plaintiff's Fourth Amendment claim based on the City's continued retention of the plaintiff's car is dismissed.

## II. Liability Under Section 1983

### a. The Individual Defendants

"Under the well-settled law of this Circuit, 'in order to establish a defendant's individual liability in a suit brought under Section 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in the alleged constitutional deprivation.'" *Tammaro v. City of New York*, No. 13-CV-6190, 2018 WL 1621535, at *9 (S.D.N.Y. Mar. 30, 2018) (quoting *Grullon v. City of New Haven*, 720 F.3d 133, 138–39 (2d Cir. 2013)). "Thus, for individual liability to attach, [the plaintiff] must plausibly allege that the [individual defendants] were personally involved in violating his procedural due process rights by depriving [the plaintiff] of his property without providing him meaningful notice of the procedures for recovery." *Id.* "[A] plaintiff should at minimum allege a defendant's intentional participation in failing to provide notice and knowledge that the plaintiff did not receive notice of the procedures to retrieve his property." *Id.* at *10.

According to the defendants, the plaintiff "fails to allege with any specificity what actions or omissions were taken by any of the individual [defendants] showing their involvement in any constitutional violations." (ECF No. 43 at 24.) The plaintiff alleges that the Commanding Officer Thomas Smith "was made affirmatively aware" that the police were holding the plaintiff's car, and knew that the officers in the precinct were following NYPD's unlawful policy of retaining people's cars; nevertheless, Smith did not investigate or address the constitutional violation. (ECF No. 29 ¶¶ 43–44.) She also alleges that Smith did not adequately train or

supervise at least one detective under his command about the procedures to follow in retaining the plaintiff's car. (*Id.* ¶ 47.) The plaintiff does not allege that defendant Smith is a "link" in the "chain of command;" she alleges that he "had responsibility for enforcing or allowing the continuation of the challenged policies that resulted in the denial" of her constitutional rights. *See McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004). The plaintiff has therefore adequately alleged that defendant Smith was personally involved.

However, the plaintiff has not adequately alleged that Lewis and Abdulla were personally involved — or involved at all — in the actions giving rise to her complaint. (*See generally* ECF No. 29.) For this reason, the claims against defendants Lewis and Abdulla are dismissed without prejudice.

*i. Qualified Immunity*

The defendants argue that the individual defendants are entitled to qualified immunity. (ECF No. 43 at 25–26.) "In making determinations on qualified-immunity claims, the Supreme Court requires a court to determine two matters, *i.e.*, (1) whether the facts alleged by the plaintiff are sufficient to make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the alleged misconduct." *Kalamaras v. Cnty. of Nassau*, No. 17-CV-1068, 2019 WL 4452281, at *9 (E.D.N.Y. Sept. 16, 2019) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Rights are "clearly established" when supporting Supreme Court or Second Circuit precedent existed at the time of the alleged unconstitutional conduct. *See Russell v. Scully*, 15 F.3d 219, 223 (2d Cir. 1994). On a motion to dismiss, "[t]he plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support [her] claim, but also those that defeat the immunity defense." *McKenna*, 386 F.3d at 436.

As explained above, the plaintiff has alleged a constitutional violation against defendant Smith, and her right to due process was clearly established. "Since at least the Second Circuit's 2006 *Krimstock* decision, it has been clear that owners of vehicles that have been seized as evidence in criminal cases are entitled to notice of their right to a hearing and 'some immediate judicial review of the retention [of their vehicle].'" *Ezagui v. City of New York*, 726 F. Supp. 2d 275, 288–89 (S.D.N.Y. 2010) (quoting *Krimstock,* 464 F.3d at 255) (alterations in *Ezagui*). The *Krimstock* court "determined that claimants must 'be given a prompt post-seizure retention hearing, with adequate notice' to comport with due process." *Innamorato v. Cnty. of Suffolk*, No. 23-CV-06573, 2025 WL 2605604, at *2 (E.D.N.Y. Sept. 9, 2025) (quoting *Krimstock*). In *Culley v. Marshall*, the Supreme Court held that "due process does not require a separate preliminary hearing before the forfeiture hearing." 601 U.S. at 390. However, "[w]hen States seize and seek civil forfeiture of personal property, due process requires a *timely* post-seizure forfeiture hearing." *Id.* at 384 (emphasis in *Culley*). Thus, defendant Smith was on notice that as of the date the NYPD seized the plaintiff's car, the plaintiff had a clearly established right to notice of her right to a timely post-seizure hearing. Accordingly, at this stage, the Court rejects the defendants' qualified immunity defense.

**b. The City Defendant**

"[M]unicipalities may be liable only where 'execution of a government's policy or custom' causes constitutional violations." *Buari v. City of New York*, 530 F. Supp. 3d 356, 397 (S.D.N.Y. 2021) (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). "A plaintiff can plead a 'policy' or 'custom' by alleging one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although

> not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Id.* at 397–98 (quoting *Jones v. Westchester County*, 182 F. Supp. 3d 134, 158 (S.D.N.Y. 2016)). The plaintiff alleges that defendant Smith was "affirmatively aware" that the plaintiff's car was being held, and that "the policy" being carried out by the precinct "was that detectives were authorized to unilaterally choose to release or retain" the plaintiff's car. (ECF No. 29 ¶ 43.) The plaintiff also alleges that the NYPD "failed to train and/or properly supervise its Detectives and Officers" as to the "clearly-established requirements of *Krimstock* and its progeny." (*Id.* ¶ 45.)

At this stage, the plaintiff's allegations are sufficient to withstand the motion to dismiss, and she is entitled to discovery on the defendants' training programs and policies. *See Jackson v. Nassau Cnty.*, 552 F. Supp. 3d 350, 380–81 n.10 (E.D.N.Y. 2021)); *see also Hamilton*, 2025 WL 2961714, at *4 ("Plaintiff Hamilton has pleaded a *Monell* claim successfully; he pleads that the City had a long-standing practice of violating *Krimstock*, and of failing to train its officers in how not to violate *Krimstock*.") Accordingly, the plaintiff's claims against the City may proceed.

**CONCLUSION**

For these reasons, the defendants' motion to dismiss is granted in part and denied in part. The plaintiff's substantive due process claim, Fourth Amendment claim, and claims against individual defendants Lewis and Abdulla, are dismissed. The plaintiff's procedural due process claims against the City and individual defendant Smith may proceed.

**SO ORDERED.**

s/Ann M. Donnelly
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
August 11, 2026